# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 19-1702V**
UNPUBLISHED

|  |  |
|---|---|
| CHLOE HIETPAS, <br><br>              Petitioner, <br><br> v. <br><br> SECRETARY OF HEALTH AND HUMAN SERVICES, <br><br>              Respondent. | Chief Special Master Corcoran <br><br> Filed: January 5, 2021 <br><br> Special Processing Unit (SPU); Decision Awarding Damages; Pain and Suffering; Meningococcal Vaccine; Vasovagal Syncope |

*John Robert Howie, Jr., Howie Law, PC, Dallas, TX, for Petitioner.*

*Ryan Daniel Pyles, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION AWARDING DAMAGES[1]

On November 1, 2019, Chloe Hietpas[2] filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[3] (the "Vaccine Act"). Petitioner alleged the Table claim that she suffered a syncopal episode, resulting in surgical intervention and other complications, as a result of two meningococcal vaccines administered to her on July 30, 2019. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] Ms. Hietpas was a minor at the time the Petition was filed, and her mother accordingly was the original Petitioner. After Ms. Hietpas turned 18 on November 14, 2020, she was substituted as the Petitioner in this case on December 10, 2020. ECF No. 51. For purposes of clarity, this decision will hereafter refer to Chloe Hietpas as Petitioner throughout the proceedings.

[3] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

Respondent conceded entitlement, but the parties disputed the quantum of damages to be awarded.

For the reasons set forth below, I find that Petitioner is entitled to an award of damages in the amount of **$155,544.26, representing compensation in the amount of $140,000.00 for actual pain and suffering, and $15,544.26 for past unreimbursable expenses**.

## I.      Relevant Procedural History

This case was initiated on November 1, 2019. ECF No. 1. At the initial status conference held on January 14, 2020, Respondent confirmed that he had already reviewed this case and intended to concede that Petitioner was entitled to compensation. ECF No. 14. Respondent filed a Rule 4(c) Report on February 12, 2020 (ECF No. 16), and two days later I issued a ruling finding Petitioner entitled to compensation. ECF No. 19.

Over the next four months, the parties attempted to informally resolve the issue of damages. *See generally* ECF Nos. 21, 23, 25. However, they confirmed on June 17, 2020, that they had reached an impasse in their discussions. ECF No. 26. At a subsequent status conference, the parties indicated that the only element of damages in dispute was compensation for Petitioner's pain and suffering, as they had agreed upon a compensation amount for Petitioner's unreimbursable expenses. ECF No. 30.

On September 11, 2020, Petitioner filed a motion for interim damages, seeking her unreimbursable expenses ($15,544.26) immediately while the parties continued to resolve pain and suffering. ECF No. 36. Respondent filed a Response on October 1, 2020 (ECF No. 40), and Petitioner replied later that day. ECF No. 41. I thereafter held a status conference with the parties on October 21, 2020. ECF No. 42. Rather than issue a piecemeal interim award, I proposed that the parties be given the opportunity in the near future to argue their remaining damages positions at a motions hearing, at which time I would decide the disputed issues, ending the matter in its entirety. *Id.* The parties confirmed that they were amenable to this proposal, and a briefing schedule was set. *Id.*[4]

Petitioner filed her brief ("Br.") in support of damages on November 20, 2020 (ECF No. 45), and Respondent responded ("Opp.") on December 2, 2020. ECF No. 49. A hearing was held on December 11, 2020, and this written decision memorializes my oral ruling issued at that time.

---

[4] I issued an Order denying Petitioner's motion for interim damages on October 22, 2020 following the status conference. ECF No. 42.

**II.      Relevant Medical History**

A complete recitation of the facts can be found in the Petition, the parties' respective pre-hearing briefs, and in Respondent's Rule 4(c) Report. In brief summary, on July 30, 2019, Ms. Hietpas (then 16 years old) was administered two meningococcal vaccines during a routine sports physical. Ex. 2 at 1. After Petitioner received the 2nd vaccination, the administrator "turned around to dispose of needles and empty vaccines," and thereafter noted that Petitioner "had passed out tipping forward onto the ground and hit [her] chin area." Ex. 3 at 8. Following this incident, Petitioner reported jaw and lower teeth discomfort. *Id.* at 3. An examination revealed a two-millimeter gap in the center of her lower teeth, which was new according to Petitioner and her mother. *Id.* A 2.5-centimeter laceration on Petitioner's chin was closed with five sutures. *Id.* at 3-4.

Later that day, Ms. Hietpas was evaluated by her orthodontist, who obtained an x-ray of her jaw. Ex. 6 at 8. The orthodontist subsequently referred Petitioner to an oral surgeon for an appointment that same day. *Id.* At the latter appointment, she reported that her bite felt abnormal. Ex. 8 at 4. Her x-rays revealed midline symphysis fracture with mild displacement as well as nondisplaced right condylar head fracture through the medial pole. *Id.* Petitioner's oral surgeon advised her that she would need surgery. *Id.* Two days later, Ms. Hietpas underwent open reduction with internal fixation ("ORIF") of her mandible and re-suturing of her chin laceration under general anesthesia. Exs. 8 at 10-12; 9 at 93-95. She was discharged the following day. Ex. 9 at 71-72.

At post-surgical appointments with her oral surgeon on August 9 and August 30, 2019, Petitioner was noted to be healing well without complications. Ex. 8 at 3. Her oral surgeon advised her to continue dietary restrictions and stated that she could resume unrestricted physical activity by mid-September. *Id.*

On October 8, 2019, Ms. Hietpas was evaluated by her oral surgeon with complaints of upper right jaw pain for approximately one week. Ex. 13 at 2. Petitioner stated that her jaw was painful when talking and in the morning upon awakening. *Id.* On examination, she exhibited right-sided temporalis tendon sensitivity, which her surgeon considered to be caused by teeth clenching or grinding. *Id.* Eleven weeks later, on December 27, 2019, Petitioner had another follow-up appointment with her oral surgeon. Ex. 14 at 4. At this appointment, she reported right ear pressure since Christmas Eve, as well as intermittent difficulty chewing very hard foods. *Id.* Petitioner again exhibited right-sided temporalis tendon sensitivity on examination, and she was assessed with acute otitis media. *Id.*

The next month, on January 13, 2020, Ms. Hietpas returned to her oral surgeon with complaints of right-sided, and slight left-sided, jaw pain. *Id.* at 5. She also mentioned

that she had noticed a "crack or pop" when opening/closing her mouth. *Id.* On examination, Petitioner had good functional movement but presented with evidence of anterior displaced disc with reduction on the right side. *Id.* Her oral surgeon advised that she undergo physical therapy for treatment of her myofascial symptoms. *Id.* Petitioner attended seven physical therapy sessions from January 30 through March 9, 2020. Ex. 16 at 6, 11-21.

On July 20, 2020, Ms. Hietpas presented to Daniel E. Taché, D.M.D., at TMJ & Orofacial Pain Treatment Centers of Wisconsin. Ex. 23 at 2-10. She reported right jaw and ear pain as well as jaw clicking/popping. *Id.* at 2-4. A TMJ Imaging Series revealed right and left TMJ displacement with reduction. *Id.* at 15-17. The next month, on August 27, 2020, Dr. Taché fitted Petitioner with an orthopedic cast. *Id.* at 18-19. In his notes, Dr. Taché stated:

> The primary purpose of this orthopedic cast is to orthopedically reposition the condyles of the mandible into the proper physiological position within the glenoid fossa of the cranium, thus reducing edema within the meniscus and capsule, therefore relieving muscles, nerve, and ligament impingement as well as allowing the dislocation to heal and a pseudo disc to develop.

*Id.* at 18. Dr. Taché instructed Ms. Hietpas to wear the appliance initially for 18 hours per day. *Id.* at 19. However, Dr. Taché stated that, as Petitioner healed, he would decrease the amount of time in which the appliance was required. *Id.* Dr. Taché estimated that the total treatment time would extend eight-to-twelve months. *Id.*

During a follow-up appointment with Dr. Taché on November 3, 2020, Ms. Hietpas stated that she had been wearing her appliance for 18 hours per day and had experienced reduced jaw pain and clicking. Ex. 26 at 2-4. There are no records of any subsequent medical treatment.

## III.    Dr. Taché's Report

Ms. Hietpas filed a report from Dr. Taché dated August 31, 2020, in which he responded to several inquiries from Petitioner regarding her injury, treatment, and future prognosis. Ex. 17. To briefly summarize, Dr. Taché noted that Petitioner's TMJ displacement with reduction could heal if she were compliant with wearing her intraoral splint for 18 hours per day for one year. *Id.* at 2-3. Dr. Taché stated that Petitioner would otherwise require physical therapy for six-to-eight weeks during this period. *Id.* at 2. Following active treatment, Dr. Taché indicated Petitioner would require biannual visits for evaluation and maintenance of the intraoral splint, which could be worn less frequently. *Id.* Regarding Petitioner's future prognosis, Dr. Taché stated that she might experience

muscle pain, flare-ups, and decline in the stability as well as the health of her TM joints. *Id.* at 2-3.

## IV.   Affidavits

In conjunction with her damages brief, Ms. Hietpas filed an affidavit providing additional information regarding her injury and treatment course. In it, she noted that the scar on her chin resulting from the injury triggered emotional distress. Ex. 27 at ¶¶ 5-6. She further stated that her injury and subsequent treatment caused her to forgo several activities, including participating in volleyball during her junior year. *Id.* at ¶¶ 7-9. Petitioner otherwise reported ongoing symptoms, including jaw pain, and noted that her orthopedic splint had led to additional difficulties with speaking. *Id.* at ¶¶ 11-13. In her affidavit, Petitioner's mother similarly described the trauma of the injury, as well as Petitioner's subsequent physical and emotional suffering. Ex. 28.

## V.   Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my determination of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[5] *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. In *Graves*, Judge Merrow rejected a special master's approach of awarding compensation for pain and suffering based on a spectrum from $0.00 to the statutory $250,000.00 cap. Judge Merrow maintained that do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Graves*, 109 Fed. Cl. at 590. Instead, Judge Merrow assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id.* at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap.

## VI.    Appropriate Compensation in this Syncope Case

In this case, Petitioner's awareness of her injury is not disputed, leaving only its severity and duration to be considered. In determining appropriate compensation for Petitioner's pain and suffering, I have carefully reviewed and considered the complete record in this case, in light of the standards discussed above – although my determination is ultimately based upon the specific circumstances of this case.

In her brief, Ms. Hietpas requests the following compensation for her injury:

- Past Pain and Suffering: $125,000.00

---

[5] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

- Future Pain and Suffering: $600.00 * life expectancy
- Past Emotional Distress: $25,000.00
- Future Emotional Distress: $600.00 per year * life expectancy

Br. at 28. In support of the above, Petitioner cites her extensive medical treatment, arguing that Dr. Taché's report establishes she will have future pain (and other symptoms) requiring ongoing management. *Id.* at 13-21. Regarding emotional distress, Petitioner contends that a separate award is warranted given her specific circumstances, including her age, her permanent scarring, and the overall severity of her injury. *Id.* at 18-21.

As Petitioner acknowledges, there are a limited number of reasoned syncope damages decisions available as a guide for comparison. Br. at 22. Nevertheless, she argues that *H.S. v. Sec'y of Health & Human Servs.*, No. 14-1057V, 2015 WL 6155891 (Fed. Cl. Spec. Mstr. Sept. 25, 2015) (awarding $60,000.00 in compensation for pain and suffering) and other syncope awards based on proffer provide a framework for assessing the proper measure of Petitioner's overall damages. Br. at 22-25. Because this case involves surgical intervention, Petitioner also asserts that SIRVA damages decisions involving surgery should be considered and weighed. *Id.* at 25-27.

Respondent submits in reaction that an award of $100,000.00 is appropriate for past and reasonably expected pain and suffering. Opp. at 1, 8. Because of the dearth of reasoned syncope decisions in the Program, Respondent discusses individual awards based on stipulation and proffer while conceding their limited value (given the privacy requirements of the Vaccine Act and because many of these decisions do not specifically delineate compensation for pain and suffering). *Id.* at 5-8. Respondent nevertheless argues that a consideration of syncope awards based on stipulation and proffer in the aggregate demonstrates that his proposed proffer in this case is reasonable. *Id.* at 6-7.

Pursuant to my oral ruling on December 11, 2020 (which is fully adopted herein), **I find that $140,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.** I reach this conclusion based on the following reasoning.

As described by the parties in their respective briefs, there have not been many syncope cases adjudicated in the Program. It appears the sole reasoned decision not based on proffer or stipulation is *H.S.*, which both parties agree involved a less severe injury than the present case. In assessing Petitioner's damages, however, I do find a handful of individual awards based on proffer (despite their limitations) helpful, including *Edwards v. Sec'y of Health & Human Servs.*, No. 18-138V, 2019 WL 7597444 (Fed. Cl. Spec. Mstr. Dec. 13, 2019) (awarding $100,000.00 for actual pain and suffering in syncopal case involving fractured jaw, ruptured eardrum, chin laceration, and fractured

teeth); *Hoelzel v. Sec'y of Health & Human Servs.*, No. 17-1987V, 2018 WL 7220754 (Fed. Cl. Spec. Mstr. Dec. 19, 2018) (awarding $100,000.00 for actual and projected pain and suffering in syncopal case involving concussion, dental fractures, and permanent facial scarring); and *Aholt v. Sec'y of Health & Human Servs.*, No. 12-55V, 2012 WL 2866119 (Fed. Cl. Spec. Mstr. June 18, 2012) (awarding $100,000.00 for actual and projected pain and suffering in syncopal case involving various injuries to face, jaw, and teeth). I am also guided by my prior experience adjudicating damages in cases involving intussusception and significant surgical intervention. Such prior decisions support a fairly high past pain and suffering award, since the one-time syncopal incident has had significant treatment consequences – and in fact I find a higher past award appropriate in this case.

In assessing the severity of Petitioner's injury, I also note that Petitioner sustained a mandibular fracture and underwent significant ORIF surgery. At post-surgical treatment sessions, Petitioner reported multiple symptoms, including jaw pain, despite undergoing a course of physical therapy. Petitioner was eventually assessed with right and left TMJ displacement with reduction, and she was fitted with an intraoral splint. Per Dr. Taché's August 2020 report, Petitioner will be required to wear the splint for 18 hours per day for one year, meaning this regimen will last until approximately two years after the date of the syncopal episode.[6] However, Dr. Taché indicated that Petitioner's condition will likely improve with treatment compliance. Petitioner will nevertheless bear permanent scarring on her chin as a result of the syncope-related laceration. Overall, I find that Petitioner and her mother have credibly described the physical and emotional impact of her syncopal injury.  My award for actual pain and suffering incorporates all of the information above.

 In her brief, Petitioner also requests separate awards for past and future *emotional* distress. However, I find these components to be part and parcel of Petitioner's pain and suffering, and not appropriately separated out from general pain and suffering. Instead, I have given weight to Petitioner's emotional distress and accounted for it in my total pain and suffering award.

Petitioner also requests an award for future pain and suffering, relying significantly on statements made by Dr. Taché regarding Petitioner's likely long-term prognosis, and also the possibility of additional treatment needed if present measures do not succeed. Many of Dr. Taché's statements are speculative, however, and I do not find the overall evidence preponderates in favor of a separate award for future pain and suffering. Instead, my award for actual pain and suffering incorporates the symptoms and treatment Petitioner can reasonably be expected to have based on the available record evidence.

---

[6] Dr. Taché also indicated that Petitioner will be required to undergo a course of physical therapy. Ex. 17 at 2-3.

## VII.    Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $140,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[7] I also find that Petitioner is entitled to $15,544.26 in actual unreimbursable expenses, in accordance with the parties' agreement.**

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $155,544.26 in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The clerk of the court is directed to enter judgment in accordance with this decision.[8]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[7] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* § 15(f)(4)(A); *Childers v. Sec'y of Health & Human Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Human Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[8] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.